FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAR 18 2003
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DATASCAPE, INC., a Georgia Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLEETBOSTON FINANCIAL CORPORATION, a Rhode Island Corporation, and FLEETBANK (RI), NATIONAL ASSOCIATION, a banking organization chartered in Rhode Island,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 1:01-CV-2246-CAP |
| DATASCAPE, INC., a Georgia Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROVIDIAN FINANCIAL CORPORATION, a Delaware Corporation, and PROVIDIAN NATIONAL BANK, a banking organization chartered in New Hampshire,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 1:01-CV-3252-CAP |
| VISA USA, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DATASCAPE, INC., a Georgia Corporation,<br><br>Defendant. | CIVIL ACTION<br><br>NO. 1:02-CV-0289-CAP |



**O R D E R**

This matter is before the court on opposing motions for entry of a proposed protective order that will apply to this consolidated action. For the reasons set forth below, Datascape's motion for entry of its proposed protective order is GRANTED in part and DENIED in part; and the Visa Parties' motion for entry of their proposed protective order is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

This matter involves three patent infringement actions which have been partially consolidated for purposes of claim construction and prior art statements. The patents-in-suit relate to methods for allowing communications to transpire over the Internet between a non-standard input/output device, which can be a smart card and/or a smart card reader, and a remote computer server. Smart cards are credit cards that include a microchip with stored information about the cardholder.

Prior to consolidation, the court instructed the parties to "agree on a protective order as soon as possible, and [] submit it to the court for entry." Pursuant to that directive, the parties negotiated the terms of a proposed protective order and agreed on all but two provisions of that order. They have now submitted competing proposals regarding the two provisions at issue.

**LEGAL ANALYSIS**

Federal Rule of Civil Procedure 26(c)(7) allows a district court to "make any order which justice requires to protect a party

or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." However, Rule 26(c) requires the party seeking protection to show "good cause" for such an order. Federal courts have superimposed a balancing of interests approach for this good cause requirement. Thus, a court must balance one party's interest in obtaining access against the other party's interest in keeping the information confidential. Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001).

The parties agree that a protective order is warranted in this case. However, they disagree about (1) the degree to which the parties' litigation counsel should be restricted from participating in patent prosecution activities and (2) whether certain potential experts or consultants should be per se denied access to an opposing party's confidential materials.

## I. The provision regarding restrictions on litigation counsels' participation in patent prosecution activities

The parties' first area of disagreement is Paragraph 3 of the proposed protective order, which concerns the disclosure of information designated as "Confidential-Attorneys Eyes Only." The parties have agreed that this designation is "reserved for information that would, in the good faith belief of the producing party, be likely to cause harm to the competitive position of the producing party if disclosed to the party or non-party seeking the

information." The parties have further agreed that Datascape's outside litigation counsel should be permitted access to such information, but that its prosecution counsel should not. The Visa Parties now seek further protection in order to minimize the risk that Datascape's litigation counsel might inappropriately use this sensitive information in connection with the prosecution of pending patent applications that are related to the patents-in-suit.

The Visa Parties' proposed language is, in relevant part:

> [A]ny attorneys, patent agents, or other persons who are allowed access to documents, information, and other things designated "CONFIDENTIAL-ATTORNEYS EYES ONLY" shall be prohibited, during the pendency of this case, from **participating, either directly or indirectly, in the prosecution of any patent applications** on behalf of the receiving party related to **the patents-in-suit, i.e.,** continuations, continuations-in-part, divisionals, reexaminations, reissues, or foreign counterparts of the patents-in-suit. [contested language in bold]

Datascape's proposed alternative is:

> [A]ny attorneys, patent agents, or other persons who are allowed access to documents, information, and other things designated "CONFIDENTIAL-ATTORNEYS EYES ONLY" shall be prohibited, during the pendency of this case, from **drafting patent applications or claim language for patent applications, including claim amendments,** on behalf of the receiving party related to **smart cards and/or the processing of smart cards, including but not limited to** continuations, continuations-in-part, divisionals, reexaminations, reissues, or foreign counterparts of the patents-in-suit. [contested language in bold]

The primary difference between the two versions of Paragraph 3 lies in the scope of activities relating to patent prosecution that are prohibited for litigation counsel having access to certain confidential information. The Visa Parties argue that this provision must be very restrictive, encompassing all direct and

indirect participation in patent prosecution, because there is a substantial risk that Datascape might use the Visa Parties' highly-sensitive business and technical information in connection with the prosecution of related patent applications. The Visa Parties also argue that Datascape might prosecute claims that are specifically designed to cover the Visa Parties' smart card technology. Such use of this confidential information, they contend, would give Datascape an unfair competitive advantage in the marketplace and before the Patent and Trademark Office ("the PTO") and could severely prejudice the Visa Parties.

Under the Visa Parties' proposed language, any person who is or may become involved with the prosecution of a patent application that is related to the patents-in-suit would be prohibited from accessing this confidential information, and any person who does access this confidential information would be prohibited from participating in the prosecution of related patent applications. Thus, Datascape counsel would have to choose between participating in this litigation, in which case they would forego the prosecution of related patent applications, or continuing the prosecution of related patent applications, in which case they would forego participating in this litigation.

The Visa Parties submit that this proposal is reasonable and narrowly tailored to their chief concern of preventing misuse of their sensitive business and technical information during the prosecution of related patent applications. They also urge that Datascape's proposed language would not afford them adequate

protection, as it would only prohibit litigation counsel from "drafting" claim language for related patent applications, but would not encompass other means of participating in patent prosecution, such as suggesting, reviewing or approving new claims, claim concepts, claim amendments or arguments.

However, Datascape argues that the Visa Parties' proposed language is vague and overbroad, in that it prohibits litigation counsel from any and all participation in prosecution activities, including participation that is "indirect." Datascape contends that the Visa Parties' proposal would prevent legitimate and necessary interaction between its litigation and prosecution counsel, even with respect to non-confidential information. Such "benign" interaction is necessary, it argues, in order to ensure adequate representation and to fulfill its duty of candor to the PTO. Datascape urges that its proposal, in contrast, is narrowly tailored to protect the one concern at issue, i.e., that a party's confidential information could be inadvertently disclosed or misused in the course of preparing new claims, without interfering with other necessary and legitimate communications. Finally, Datascape takes issue with the fact that the Visa Parties' proposed language does not place mutual restrictions on all parties, but rather only limits the activities of Datascape counsel.

As stated above, in determining whether a protective order is warranted under Rule 26(c), the court must balance one party's interest in keeping information confidential against the opposing party's interest in obtaining access to such information. <u>Chicago</u>

Tribune, 263 F.3d at 1313. In cases concerning access to confidential litigation materials by counsel involved in patent prosecution, district courts balance the risk of inadvertent disclosure against the risk that the protective order will impair the opposing party's ability to litigate the action. See, e.g., In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *7 (E.D. La. May 4, 2000); Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, at *5 (N.D. Ill. Aug. 5, 1999). In assessing the risk of inadvertent disclosure, the primary consideration is whether the attorneys with access to the confidential information are involved in competitive decisionmaking. See, e.g., In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *7; Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *5. Involvement in competitive decisionmaking refers to counsel's advice and participation in any or all of the client's decisions, e.g., decisions regarding pricing or product design, made in light of similar or corresponding information about a competitor. See, e.g., In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *7-8; Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *5.

The courts also agree that competitive decisionmaking includes participation in prosecuting patent applications related to the patents-in-suit. See, e.g., In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *12 ("it is clear that the advice and participation of the . . . parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely

competitive decisionmaking activity and would be informed by access to the [opposing] parties['] confidential information"); Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *10 ("competitive decisionmaking is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted," so long as prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process).

The concern about competitive decisionmaking in the area of patent prosecution stems from the possibility that counsel might file new claims in existing and pending patents based on confidential information discovered during the course of litigation. See In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *12. See also Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *9 (noting that the concern is whether a party's involvement in developing a patent prosecution strategy will be informed by confidential information to the competitor's detriment). This interest in preventing misuse of confidential patent information also encompasses disclosures to the PTO. See Medtronic, Inc. v. Guidant Corp., 2001 U.S. Dist. LEXIS 22805, at *13-14 (D. Minn. Dec. 19, 2001) ("In an attempt to comply with disclosure requirements, it may be difficult to separate one's own ideas from ideas gleaned during . . . litigation. Prosecuting a patent requires a working knowledge of the proposed device and its relationship to prior art. Such an intimate relationship with the

device itself makes a limit on . . . counsel's ability to prosecute patents appropriate.").

This concern has led courts to conclude that even if counsel maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse of information and the difficulty of distinguishing the source of a party's basis for filing new claims is too great to allow access to confidential materials. <u>See</u> <u>In re Papst Licensing</u>, 2000 U.S. Dist. LEXIS 6374, at *12. <u>See also</u> <u>Motorola, Inc. v. Interdigital Tech. Corp.</u>, 1994 U.S. Dist. LEXIS 20714, at *14-15 (D. Del. Dec. 19, 1994) ("Attorneys who were to view [opposing counsel's] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the . . . attorneys may be.").

Thus, courts generally find that prohibitions on litigation counsels' ability to prosecute patents in the same area as the patents-in-suit are reasonable. <u>See, e.g.</u>, <u>In re Papst Licensing</u>, 2000 U.S. Dist. LEXIS 6374, at *13-14; <u>Interactive Coupon</u>, 1999 U.S. Dist. LEXIS 12437, at *11. Likewise, this court finds that some protection is needed in the instant case in order to prevent any inadvertent misuse of confidential information in the prosecution of related patents. Moreover, the hardship to

Datascape is likely to be minimal, since it has retained separate litigation and prosecution counsel. Compare Mikohn Gaming Corp. v. Acres Gaming, Inc., 1998 U.S. Dist. LEXIS 22251, at *14 (D. Nev. Apr. 15, 1998) (holding that a law firm that served jointly as outside litigation counsel and as patent prosecution counsel for one of the parties could not access confidential information, despite the firm's arguments that denial of access to such information would undermine its ability to represent its client effectively and would essentially disqualify it from the case).

In weighing the risk of inadvertent disclosure against the risk of impairing the parties' ability to litigate this action, the court agrees with the Visa Parties' contention that more activities need to be prohibited than simply the drafting of patent applications and claim language. Indeed, none of the cases cited by the parties involves such a narrow scope of protection. See Medtronic, 2001 U.S. Dist. LEXIS 22805, at *15 (approving a protective order providing that access to confidential information would be denied to counsel who are "involved in the prosecution or drafting of patent applications, claim language for patent applications, or arguments made in support of patent applications" for related inventions); In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, at *14 (approving a protective order providing that counsel with access to confidential information "shall not prosecute, supervise or assist in the prosecution of any [related] patent application"); Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *11 (holding that counsel with access to confidential

information "shall not participate in the prosecution of any [related] patent application"); Motorola, 1994 U.S. Dist. LEXIS 20714, at *17-18 (modifying a protective order to provide that counsel with access to confidential information "shall not prosecute any [related] patent application").

Accordingly, the court approves the Visa Parties' proposed language for Paragraph 3 of the protective order. This limitation on access to confidential information shall apply to counsel for both Datascape and the Visa Parties.

**II. The provision regarding expert and consultant access to an opponent's confidential materials**

The parties also disagree about Paragraph 2(c) of the protective order, which concerns the showing necessary to preclude a proposed expert or consultant from having access to an opposing party's confidential materials. The parties have agreed that documents or things may be designated as "Confidential" if they contain "(a) non-public, proprietary, or confidential financial or business information, (b) technological trade secret information, (c) non-public, proprietary, or confidential sales and customer information, or (d) non-public, proprietary, or confidential corporate and strategic planning information." The parties have also substantially agreed on the language of Paragraph 2(c), which allows each party's independent experts and consultants to access such materials. However, the Visa Parties seek to include an additional clause to that paragraph, which would exclude certain experts and consultants from having any access to these materials.

The Visa Parties' proposed language provides:

> With respect to all documents and things produced by a party to this action for inspection and copying and which are designated as "CONFIDENTIAL" by the producing party, the documents and things, and the information contained therein, shall be kept confidential . . . and . . . shall not be communicated in any matter, either directly or indirectly, to any person or entity other than: . . . (c) Independent experts and consultants, and the employees of such experts and consultants who are assisting them, retained or consulted by counsel of record for any party for the purpose of assisting counsel in the litigation **(provided they are not presently, and have no plans to become, (i) an employee or consultant of any Payment Services Competitor, with respect to experts and/or consultants retained by Datascape, or (ii) an employee or consultant of a competitor of Datascape, with respect to experts and/or consultants retained by any other party, and (iii) provided that their testimony will consist of expert opinions rather than lay opinions).**[1] [contested language in bold]

The Visa Parties insist that the additional language is necessary in order to reduce the risk of inadvertent disclosure of confidential and proprietary information to a disclosing party's competitor, which would cause economic and commercial harm. Their proposed language would prohibit the disclosure of such information to any expert or consultant who is, or has present plans to become, an employee of or a consultant for a competitor of the disclosing party. The Visa Parties argue that this per se restriction is

---

[1] The Visa Parties' proposed language further defines "Payment Services Competitor" as "any entity that is known to the general public primarily as the issuer, licenser, operator, or processor of any credit, charge, or debit card services, including but not limited to American Express, MasterCard International, Mondex, Maestro, Cirrus, Novus, Discover, Diners Club, First Data Corporation, Japan Credit Bureau, Europay, Carte Blanche, and any other competitor of Visa USA, FleetBoston Financial Corporation, Fleet Bank (RI), National Association, Providian Financial Corporation, and Providian National Bank."

necessary, because the risk of inadvertent disclosure is too great when the expert or consultant is working for a competitor of the disclosing party.

The Visa Parties also argue that their proposed language is narrowly tailored to that concern, because it restricts access only to a specific class of independent experts, without excluding all experts or consultants who are involved in the payment services industry. In particular, they point out, their proposal does not restrict disclosure to *former* employees of or consultants for a competitor or to experts who *may at some point in the future* become employees of or consultants for a competitor.

However, Datascape argues that the Visa Parties' proposed language is too restrictive, as it "would place thousands of experts and consultants off limits" without any showing that they are active in any particular technological area or are involved in competitive decisionmaking activities. Datascape further argues that this proposal would effectively preclude it from using any expert or consultant with any current or planned involvement with any entity in the payment services industry. Such experts are required, it argues, in order to address contentions of invalidity and support its claims for damages. Moreover, Datascape contends that a blanket prohibition is fundamentally unfair, because the Visa Parties would retain the right to present expert testimony regarding the current state of the payment services industry, while denying that same right to Datascape.

Finally, Datascape contends that the additional language is unnecessary, because the agreed-upon language of Paragraph 6 of the proposed protective order provides adequate safeguards regarding disclosure of confidential information to experts and consultants. That paragraph sets forth the procedure for identifying proposed experts and consultants and provides a means of objecting to an opposing party's choice of an expert or consultant and, if necessary, seeking relief from the court.[2] Datascape urges that instead of using a blanket prohibition, the parties should use the procedure outlined in Paragraph 6 to engage in a particularized inquiry as to an expert or consultant's involvement in competitive decisionmaking for a competitor.

---

[2] Paragraph 6 of the proposed protective order provides, in relevant part:

> In connection with independent experts and consultants falling under paragraph 2(c) above, each party shall disclose in writing to the other parties the identity, residence and curriculum vitae of each independent expert or consultant, and shall provide the producing party with a copy of the declaration executed by each independent expert or consultant, at least ten (10) business days prior to any disclosure of any documents, information or other things designated "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS EYES ONLY" to such expert or consultant. Such curriculum vitae shall disclose all current and former employers and/or consulting engagements of the independent expert or consultant. If a party objects to an identified expert or consultant, the party shall make its objections known in writing within five (5) business days of notification. If agreement on the independent expert or consultant cannot be reached, the objecting party shall have ten (10) business days after making its objections known to seek relief from the court. In such a case, no disclosure shall be made to the expert or consultant until the Court has ruled on the objecting party's motion for relief. If the objecting party fails to seek relief from the Court within that time, the objection shall be deemed waived and the documents, information or other things may be disclosed to the expert or consultant subject to the other provisions of this Consent Confidentiality Order.

As stated above, under Rule 26(c), the party seeking a protective order for allegedly confidential information bears the burden of showing good cause for such an order. In determining whether that burden has been met, the court must balance that party's interest in keeping the information confidential against the opposing party's interest in obtaining access to such information. Chicago Tribune, 263 F.3d at 1313. Thus, in this instance, the court balances the Visa Parties' interest in protecting their confidential information from being inadvertently disclosed to their competitors against Datascape's interest in obtaining certain experts or consultants, who would be excluded under the Visa Parties' proposal, and allowing them to access and review confidential information during the course of this litigation.

The court determines that the Visa Parties have not met their burden of showing good cause for creating a blanket restriction on access to confidential information for every potential expert or consultant who is, or has present plans to become, an employee of or a consultant for any of their competitors. Rather, potential experts or consultants should be scrutinized on an individualized basis to determine the likelihood that they might inadvertently disclose confidential information to competitors. See, e.g., U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (holding that in-house counsel cannot be categorically excluded from accessing confidential information, but rather "the factual circumstances surrounding each individual counsel's activities,

association, and relationship with a party . . . must govern any concern for inadvertent or accidental disclosure"); Digital Equip Corp. v. Micro Tech., Inc., 142 F.R.D. 488, 491 (D. Colo. 1992) (stating that the determination of whether an individual is "independent," and thus should be allowed access to confidential material, should rest on considerations of the individual's relationship to or status within a party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors). See also Rice v. United States, 39 Fed. Cl. 747, 751 (1997) (noting that a potential expert's status as an "active consultant" in the technological area at issue has been cause for disqualification from reviewing proprietary information); Wang Labs., Inc. v. CFR Assoc., 125 F.R.D. 10, 13 (D. Mass. 1989) (barring an expert from accessing confidential material where he was currently consulting with other companies about competing products).

The court agrees with Datascape's contention that such an individualized inquiry can be made under Paragraph 6 of the proposed protective order. The court also agrees that a blanket restriction on access to confidential information by an entire category of potential experts and consultants, such as the Visa Parties have proposed, may unfairly hinder Datascape's ability to litigate this case.

Accordingly, the court approves Datascape's proposed language for Paragraph 2(c) of the protective order.

**CONCLUSION**

For the foregoing reasons, the court hereby:

(1) GRANTS in part and DENIES in part plaintiff Datascape's motion for entry of its proposed protective order [Doc. No. 50-1 (Civil Action No. 1:01-CV-2246), Doc. No. 22-1 (Civil Action No. 1:01-CV-3252), Doc. No. 38-1 (Civil Action No. 1:02-CV-0289)];

(2) GRANTS in part and DENIES in part the defendants' motion for entry of their proposed protective order [Doc. No. 51-1 (Civil Action No. 1:01-CV-2246), Doc. No. 23-1 (Civil Action No. 1:01-CV-3252), Doc. No. 39-1 (Civil Action No. 1:02-CV-0289)]; and

(3) ENTERS the proposed protective order submitted by the parties. With regard to the disputed provisions, the substance of that protective order provides as follows:

> 3. [A]ny attorneys, patent agents, or other persons who are allowed access to documents, information, and other things designated "CONFIDENTIAL-ATTORNEYS EYES ONLY" shall be prohibited, during the pendency of this case, from participating, either directly or indirectly, in the prosecution of any patent applications on behalf of the receiving party related to the patents-in-suit, i.e., continuations, continuations-in-part, divisionals, reexaminations, reissues, or foreign counterparts of the patents-in-suit.
>
> 2.(c) Independent experts and consultants, and the employees of such experts and consultants who are assisting them, retained or consulted by counsel of record for any party for the purpose of assisting counsel in the litigation[.]

SO ORDERED, this 18th day of March, 2003.

CHARLES A. PANNELL, JR.
United States District Judge